IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| **JOSEPH KRAMEK,** | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) ) Case No. 6:26-cv-03005-MDH |
| **BLUE EYE R-V SCHOOL DISTRICT, et. al.,** | ) ) ) |
| **Defendants.** | ) |

## ORDER

Before the Court are Plaintiff's *Pro Se* Motion to Waive Security Bond (Doc. 2) and Emergency Motion for a Temporary Restraining Order ("TRO") (Doc. 3).[1] The Court held a motion hearing on January 20, 2026, in which Plaintiff and counsel for Defendant Hollister R-V School District were present. The motion is now ripe for adjudication on the merits. For reasons discussed herein, Plaintiff's Motion for a TRO is **DENIED** and Plaintiff's Motion to Waive Security Bond is **FOUND AS MOOT**.

## BACKGROUND

This case arises out of Plaintiff being removed from a varsity girls basketball tournament and being banned from attending any athletic events and school properties from the Hollister R-V School District for the 2025-2026 academic year. Plaintiff Joseph Kramek is a resident of Missouri and the parent of a minor student-athlete in the Hollister R-V School District. Defendant Hollister R-V School District is a Missouri public school district.

---

[1] On January 15, 2026, Plaintiff filed a Notice of Voluntary Dismissal of Defendants Blue Eye R-V School District and Roger Cavener. (Doc. 5). The Court subsequently Ordered Defendants Blue Eye R-V School District and Roger Cavener dismissed from the case without prejudice. (Doc. 6). To the extent Plaintiff's motion seeks any relief from Defendants Blue Eye R-V School District or Roger Cavener it is found as moot.

1

On January 7, Plaintiff attended a Missouri State High School Activates Association ("MSHSAA") sanctioned girls varsity basketball tournament at Sparta High School. Plaintiff alleges that during the event, Mr. Cavener, the principal of Blue Eye High School, aggressively confronted and intimidated Plaintiff in front of minor children and other spectators. Plaintiff alleges he was subjected to harassment and forced removal from the public event without lawful justification or due process. Plaintiff then states he engaged in protected speech and petitioning activity by lodging formal complaints regarding Defendant Cavener's conduct. Plaintiff alleges that Defendant Hollister R-V School District, acting on information or requests from Blue Eye R-V School District officials, imposed an indefinite ban on Plaintiff's attendance at all athletic events and school properties. Plaintiff alleges that Defendants threatened Plaintiff with criminal trespass enforcement if he attempted to attend future events.

Plaintiff brings six counts in his Complaint: Count I – 42 U.S.C. § 1983 First Amendment Retaliation; Count II – 42 U.S.C. § 1983 Fourteenth Amendment Due Process; Count III – Assault; Count IV – Intentional Infliction of Emotional Distress; Count V – Negligent Supervision and Retention; and Count VI – Declaratory and Injunctive Relief. Plaintiff brings his current motions seeking a waiver of security bond and a TRO lifting the ban on Plaintiff's attendance at school events. The Court will first evaluate the merits of Plaintiff's TRO motion and then proceed onto the motion to waive security bond.

**STANDARD**

In analyzing a request for a TRO, the Court weighs: 1) probability movant will succeed on the merits; 2) threat of irreparable harm to the movant absent injunction; 3) balance between threatened harm to the movant and harm the injunction would inflict on other interested parties; and 4) the public interest. *Dataphase Sys., Inc. v. C L Syst., Inc.*, 640 F.2d 109, 114 (8th Cir.1981)

(en banc). "No single factor is dispositive;" rather, the court must consider all factors to determine whether on balance they weigh towards granting the remedy. *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987).

## DISCUSSION

I.       **Temporary Restraining Order**

    A.       **Success on the Merits**

When evaluating a movant's "likelihood of success on the merits," the court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined. *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987) (quoting *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). At this preliminary state, the court need not decide whether the party seeking the temporary restraining order will ultimately prevail. *Kersten v. City of Mandan*, 389 F. Supp. 3d 640, 645 (D.N.D. 2019) (citing *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007)). Although a temporary restraining order cannot be issued if the movant has no chance on the merits, "the Eighth Circuit has rejected a requirement as to a 'party seeking preliminary relief prove a greater than fifty percent likelihood that he will prevail on the merits.'" *Id.* (quoting *Dataphase*, 640 F.2d at 113). The Eighth Circuit has also held that of the four factors to be considered by the district court in considering relief, the likelihood of success on the merits is the "most significant." *Kersten v. City of Mandan*, 389 F. Supp. 3d 640, 645–46 (D.N.D. 2019) (quoting *S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir. 1992)).

The Court will now evaluate Plaintiff's claims regarding their likelihood of success on the

3

merits.[2]

### i. 42 U.S.C. § 1983 – First Amendment Retaliation

"The essential elements of a [42 U.S.C.] § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Brown v. Smith*, No. 4:25-CV-01285-RHH, 2025 WL 2799876, at *2 (E.D. Mo. Oct. 2, 2025) (quoting *Green v. Byrd*, 972 F.3d 997, 1000 (8th Cir. 2020)). The three elements of a First Amendment retaliation claim are: (1) the plaintiff engaged in protected activity, (2) the Government took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Wolk v. City of Brooklyn Ctr.*, 107 F. 4th 854, 860 (8th Cir. 2024) (citing *Green v. City of St. Louis*, 52 F.4th 734, 739 (8th Cir. 2022)).

Plaintiff argues that Defendants ban followed Plaintiff's protected speech in criticizing school officials and thus will likely succeed on the merits as to this claim. Defendant argues that the suspension was not due to a complaint filed by Plaintiff but rather for the actions at the January 7, 2026, basketball game and a history of disruption from Plaintiff.

The Court finds that Plaintiff has failed to show a likelihood of success on the merits as to this claim. Plaintiff contends that his ban resulted from complaints he filed against Mr. Cavener and thus was retaliation of his first amendment rights. However, Sean Woods, the Superintended of Hollister R-V School District, addressed a Notice of Suspension from District-Sponsored

---

[2] Plaintiff's Complaint alleges Count VI – Declaratory and Injunctive Relief where Plaintiff seeks a declaration that the indefinite ban is unconstitutional and a permanent injunction preventing its enforcement. As this count seeks remedies and are not independent causes of action, the Court will decline to analyze Count VI regarding its likelihood of success on the merits. *See* Ponce v. Wells Fargo Bank, N.A., 6:19-cv-03152-RK, 2019 WL 4345989, at *3 (W.D. Mo. Sept. 12, 2019) (quoting STIM, LLC v. Aecom Tech. Servs., Inc., 4:15-cv-0772-ODS, 2016 WL 1298145, at *2 (W.D. Mo. Apr. 1, 2016)); *see also* Henke v. Arco Midcon, L.L.C., 750 F.Supp.2d 1052, 1059 (E.D. Mo. 2010).

Athletic Events and Appeal Letter ("Notice") to Plaintiff which stated:

> suspension was made due to the incident from January 7, 2026, as well as previous documented incidents that have resulted in suspensions from games and activities due to inappropriate behavior at the high school, middle school, and youth levels in the 2022-2023; 2023-2024; 2024-2025 school years.

(Plaintiff's Exhibit B). Further, a report from the MSHSAA of the incident on January 7, 2026, shows a different version of events from Plaintiff's allegations. Jeffrey Reese Grevillius, the official for the game between Hollister and Blue Eye High School wrote:

> I was informed by my partner that a Hollister parent, who was seated in the blue Eye section, had been asked to leave the venue due to repeated taunting of Blue Eye Spectators and later directing comments toward a player on the Blue Eye bench. This resulted in a disruption of approximately five to ten minutes in the flow of the game. As the individual was escorted out, I personally heard him make threatening remarks toward Blue Eye spectators, their administrator (I believe) and the Sparta administrator on duty, including statements referencing a confrontation in the parking lot. I also heard the use of profanity directed at the Sparta administrator and Blue Eye fans, including phrases such as "F**k off" and "F**k you." I was later informed that the individual challenged the administrator's authority to remove him from the venue. He was advised that he could either leave voluntarily or law enforcement would be contacted to assist with his removal. I was also informed by the Hollister administrator that this was not the first incident involving this individual. Once the individual and his family exited the gymnasium, the game resulted without further issue.

(Defendant's Exhibit 2).[3] Additionally, Defendant submitted two other letters addressed to Plaintiff detailing past disruptive conduct. On November 9, 2022, Dr. Rachel Hodges, Principal of Hollister Middle School wrote:

> Your behavior at the middle school girls basketball game on November 8th did not meet those standards of behavior.
>
> - You aggressively approached a coach after the game
>
> - You did not stop and walk away after being directed to do so several times by building administration

---

[3] Roger Cavener, the Blue Eye High School Principal, and Nicole Humble, Elementary Principal and Game Supervisor, also wrote incident reports concluding a similar chain of events at the January 7, 2026, basketball game. (Defendant's Exhibit 5).

> These behaviors do not follow the expectations of parents and spectators that were shared with you in preseason meetings and announcements during the game.

(Defendant's Exhibit 4). After this incident Plaintiff was suspended from Hollister Middle School basketball contests, practices or team activities through November 20, 2022. *Id.* Another letter dated November 20, 2023, by Mike Johnson, District Athletic Director of Hollister High School wrote:

> Your behavior at our youth basketball camp on November 18th did not meet those standards of behavior.
>
> - You yelled at a coach during camp to correct a high school player who you claimed was teaching the skill wrong, and said they were being lazy.
>
> These behaviors do not follow the expectations of parents and spectators that are listed in the Parent Code of Ethics for out youth athletic programs.

(Defendant's Exhibit 3). Plaintiff was suspended from attending any youth activities including practices, games, and camps through December 18, 2023.

Here, Plaintiff has had a history of disruptions in the Hollister R-V School District. The Notice received on January 16, 2026, stated the suspension was due to the incident from January 7, 2026, and his past inappropriate behavior occurring during every school year since the 2022-2023 academic school year. (Plaintiff's Exhibit B). The suspension likely stems from these repeated violations of conduct rather than retaliation from filing a complaint against Mr. Cavener who is no longer a party to this action nor associated with Defendant Hollister R-V School District. For the reasons stated, Plaintiff has failed to show a likelihood of success on the merits regarding Count I – 42 U.S.C. 1983 First Amendment Retaliation.

    **ii.**     **42 U.S.C. § 1983 – Fourteenth Amendment Due Process Violation**

The Fourteenth Amendment's Due Process Clause provides that, "[no] State shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend.

6

Case 6:26-cv-03005-MDH    Document 12    Filed 01/22/26    Page 6 of 14

XIV, § 1. "Procedural due process claims require a two-step analysis. Initially, a plaintiff must demonstrate that the state deprived him of some 'life, liberty, or property' interest. If successful, the Plaintiff must then establish that the state deprived him of that interest without sufficient 'process.'" *L.H. v. Indep. Sch. Dist.*, No. 4:22-CV-00801-RK, 2023 WL 2192234, at *6 (W.D. Mo. Feb. 23, 2023) (quoting *Krentz v. Robertson*, 228 F.3d 897, 902 (8th Cir. 2000)). In determining sufficient process, courts consider (1) the private interest affected; (2) the risk of erroneous deprivation of such interest, including the probative value of substitute or additional safeguards; and (3) the government's interest, including the function involved and the burdens that any additional or substitute procedural requirements would entail. *reVamped LLC v. City of Pipestone*, No. 25-1076, 2025 WL 3716363, at *2 (8th Cir. Dec. 23, 2025). The inquiry "focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures." *Id.* (quoting *Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998)).

Plaintiff argues that he was deprived of his liberty interest in his children's education and activates without written notice, evidence, or a hearing. Plaintiff asserts that the Eighth Circuit recognizes that a school's power to exclude is not absolute and must comply with procedural due process thus stating he is likely to succeed on the merits of his claim.

Plaintiff has failed to show a likelihood of success on the merits as to this claim. Specifically, Plaintiff has failed to show that Defendant Hollister R-V School District has deprived him of sufficient process. During the January 20, 2026 motion hearing, Plaintiff the January 16, 2026, Notice. (Plaintiff's Exhibit B). The Notice informed Plaintiff that he was prohibited from attending all district-sponsored athletic events through the conclusion of the 2025-2026 school year pursuant to Board Policy KK – Visitors to District Property and Events. *Id.* The Notice further

7

Case 6:26-cv-03005-MDH    Document 12    Filed 01/22/26    Page 7 of 14

states:

> You have the right to appeal this administrative action pursuant to Board Policy KL/KL-AF(1) – Public Concerns and Complaints.
>
> **1. Appeal to the Superintendent**
> Any appeal must be submitted in writing via mail or email to the Superintendent within ten (10) business days of receipt of this letter. The appeal should clearly state the nature of the complaint, the relief sought, and any information you wish the district to consider. The Superintendent or designee will provide a written response within five (5) business days of receiving the appeal, unless additional time is necessary to investigate or extenuating circumstances exist.
>
> **2. Request for Board of Education Review**
> If the matter is not resolved at the Superintendent level, you may request that the complaint be forwarded to the Board of Education for consideration in accordance with Board policy. The Board will determine the manner in which it will be reviewed. You will be notified in writing of any Board action or decision.

*Id.* The Court finds this process is considered sufficient for due process under the Fourteenth Amendment.

When looking at the factors, the private interest affected, Plaintiff's ability to watch his daughter play basketball on district property and at district activities is important. (Plaintiff's Exhibits D and E). However, the risk of erroneous deprivation of such interest, including the probative value of substitute or additional safeguards is low. Plaintiff has a documented record of incidents that have resulted in suspensions from games and activities due to inappropriate behavior at the high school, middle school, and youth levels documented from the 2022-2023; 2023-2024; and 2024-2025 school years. (Plaintiff's Exhibit B). Lastly, the Hollister R-V School District's interest in having events as part of the total educational program as a means for developing positive social interaction, good sportsmanship, and appropriate behavior, in addition to knowledge and skills is equally important. (Defendant's Exhibit 1). Defendant Hollister R-V School District has promulgated Policy KK titled Visitors to District Property and Events that outlines appropriate behaviors for visitors including to "exhibit good sportsmanship, citizenship, ethics, and integrity

at all district events and at all times while on district property.[4] *Id.* Defendant Hollister R-V School District also has a policy allowing Plaintiff to appeal to the Superintendent of the School District and also to request for Board of Education review. Given these polices and procedures the Court finds that factors weighing sufficient process has been met here. For the reasons stated, Plaintiff has failed to show a likelihood of success on the merits regarding Count II – 42 U.S.C. 1983 Fourteenth Amendment Due Process Violation.

### iii. Assault

Plaintiff brings Count III - Assault solely against Defendant Roger Cavener. As Defendant Roger Cavener has been dismissed from the case, the Court finds this claim is moot.

### iv. Intentional Infliction of Emotional Distress

"To state a claim for intentional infliction of emotional distress, a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." *Kyndryl, Inc. v. Cannady*, No. 23-03279-CV-S-BP, 2024 WL 3102043, at *5 (W.D. Mo. May 28, 2024), *appeal dismissed sub nom. Kyndryl Holdings, Inc. v. Cannady*, No. 24-2279, 2024 WL 5240820 (8th Cir. Nov. 5, 2024) (quoting *Gibson v. Brewer*, 952 S.W.3d 239, 249 (Mo. 1997) (en banc)). In addition, "[t]he conduct must be intended only to cause extreme emotional distress to the victim." *Id*. (quotation omitted). To support a claim for intentional infliction of emotional distress ("IIED"), the challenged "conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*.

---

[4] Administrative Procedure KK-AP(1): Visitors to District Property and Events – (Public Conduct on District Property) also includes examples of inappropriate conduct including but not limited to: (1) possessing, distributing, using, or being under the influence of any alcoholic beverage or illegal substance, including medical and recreational marijuana; possessing a weapon in violation of school board policy; violating board policy or the posted or stated rules of the event; fighting or otherwise striking or threatening another person; failing to obey the instructions of a security official or district employee; and engaging in any illegal or disruptive activity. Exhibit 1.

9

(quotation omitted). Under Missouri law, it is the court's role to determine "whether the defendant's conduct may be reasonably regarded as so extreme and outrageous as to permit recovery [but] Missouri case law reveals very few factual scenarios sufficient to support a claim for intentional infliction of emotional distress …." *Gillis v. Principia Corp.*, 832 F.3d 865, 874–75 (8th Cir. 2016) (cleaned up). "[I]t is a rare occurrence when a defendant's conduct is sufficiently extreme and outrageous to warrant recovery." *Id.*

Plaintiff has not demonstrated a likelihood of success on the merits as to this claim. Plaintiff does not argue this claim in his Emergency Motion for TRO and Plaintiff's Complaint as to this claim states "[t]he conduct of Defendants was extreme, outrageous, and exceeded all bounds of decency[.]" (Doc. 1, page 2). Plaintiff has failed to allege what specific Defendant he is referring to, what specific conduct he alleges was so extreme and outrageous, and what bodily harm he suffered due to severe emotional distress. Without more, this Court cannot find that Plaintiff has demonstrated a likelihood of success on the merits as to this claim. For the reasons stated, Plaintiff has failed to demonstrate a likelihood of success on the merits as Count IV – Intentional Infliction of Emotional Distress.

### v. Negligent Supervision and Retention

Plaintiff brings Count V – Negligent Supervision and Retention against Defendant Blue Eye R-V School District. As Blue Eye R-V School District has been dismissed from the case, the Court finds this claim is moot.

The Court having reviewed Plaintiff's claims finds that the likelihood of success on the merits factor weights against the issuance of a TRO.

### B. Irreparable Harm

"Irreparable harm" signifies harm for which "a party has no adequate remedy at law,

10

Case 6:26-cv-03005-MDH     Document 12     Filed 01/22/26     Page 10 of 14

typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). To qualify, the harm must be "certain and great and of such imminence that there is a clear and present need for equitable relief." *Walls v. Sanders*, 733 F. Supp. 3d 721, 738 (E.D. Ark. 2024) (quoting *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013)).

Plaintiff argues that the harm in this case is current and escalating. Plaintiff argues that because he filed complaints against Mr. Cavener, Hollister R-V School District, acting on information or requests from Blue Eye R-V officials imposed an indefinite ban on Plaintiff's attendance at all athletic events and school properties. Plaintiff states that the threat of arrest for exercising a constitutional right is a classic irreparable injury and thus he has, and continues to, suffer irreparable harm.

The Court finds that Plaintiff has not shown irreparable harm. Plaintiff contends that his ban resulted from complaints he filed against Mr. Cavener and thus was retaliation of his first amendment rights. However, as discussed above, Plaintiff has failed to show a likelihood of success on the merits regarding his Count I – 42 U.S.C. § 1983 First Amendment Retaliation claim. Further, the ban imposed on Plaintiff is not indefinite but is effective through the conclusion of the 2025-2026 school year. (Plaintiff's Exhibit B). Plaintiff is also given an opportunity to appeal this ban to the Superintendent and additionally through a request for a Board of Education review. *Id.* While attendance at a high school basketball game is important, especially to support a family member, this harm is not so great as to require equitable relief.[5] Plaintiff is better suited going through his administrative remedies before escalating the matter to federal court. For the reasons

---

[5] Defendant Hollister R-V School District's ban does not prohibit Plaintiff from watching games online through the MSHSAA website when available. This ability to view the games without being physically present diminishes Plaintiff's alleged irreparable harm.

stated, the irreparable harm factor weighs against the granting of a TRO.

  C. **Balance of Interests**

The balance of equities analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and other interested parties, including the public. *Dataphase*, 640 F.2d at 113. In doing so, courts consider the threat to each of the parties' rights that would result from granting or denying the injunction, the potential economic harm to the parties, and interested third parties, and whether the defendant has already taken remedial action.

Plaintiff argues that he seeks only to peacefully sit in public bleachers to watch his daughters play. Plaintiff asserts that Defendants face no cognizable harm by allowing Plaintiff's attendance. Defendant argues that Plaintiff has a documented history of inappropriate behavior at Hollister R-V School District activities in the 2022-2023, 2023-2024, and 2024-2025 academic school years. Defendant argues that denying the injunction would help ensure Hollister events would be free from disruption and limit future litigation to the school district.

The Court finds the balance of interests weighs against granting a TRO. As discussed earlier, Plaintiff has a documented history of disruption at Hollister athletic events. It is clear from the record that there would be no guarantee that Plaintiff would be able to refrain from disruptive behavior should this Court grant his request for a TRO. However, there is certainty that Defendant Hollister R-V School District would be better able to ensure the operations of its athletic events should the TRO be denied. Further, interested third parties such as the officiating crew, administrators, coaches and teams would be better served in this case with a denial of the TRO. For the reasons stated, the Court finds the balance of interests weighs against granting of a TRO.

  D. **Public Interest**

Lastly, the Court must consider whether the public interest would be served by an

injection. *Sanderson v. Bailey*, 700 F. Supp. 3d 713, 723 (E.D. Mo. 2023), *appeal dismissed*, No. 23-3394, 2023 WL 11159779 (8th Cir. Dec. 11, 2023). Plaintiff argues that this factor weighs in his favor as the public interest is always served by requiring government entries to comply with the Constitution. Defendant argues that public interest is served by allowing it to follow its policies directed at visitors to district property and events to ensure appropriate behavior is followed and that the events Hollister R-V School District runs are not disrupted.

The Court finds the public interest factor weights against granting a TRO. The Court agrees with Plaintiff that the public interest is served by requiring government entities to comply with the constitution. However, as discussed above the Court finds Plaintiff has failed to demonstrate a likelihood of success on the merits regarding his constitutional claims. Further, the Court acknowledges the public interest in allowing school district events to continue without disruption. This would benefit the fans, players, coaches, officiators and other interested parties. When looking at the two competing interests, the Court finds the stronger argument to be with the Defendant. For the reasons stated, the Court finds the public interest factor weights against granting a TRO. The Court having considered all factors to determine whether on balance they weigh towards granting a TRO, this Court finds entry of a TRO improper. For foregoing reasons, Plaintiff's *Pro Se* Emergency Motion for a TRO is **DENIED**.

## II. Waiver of Security Bond

As the Court has found the entry of a TRO improper, the Court finds a waiver of the security bond associated with the TRO is found as moot. For the reasons stated, Plaintiff's Motion to Waive Security Bond is **FOUND AS MOOT**.

## CONCLUSION

13

Case 6:26-cv-03005-MDH    Document 12    Filed 01/22/26    Page 13 of 14

The Court having considered all factors to determine whether on balance they weigh towards granting a TRO, this Court finds entry of a TRO improper. For foregoing reasons, Plaintiff's *Pro Se* Emergency Motion for a TRO is **DENIED** and Plaintiff's Motion to Waive Security Bond is **FOUND AS MOOT**.

**IT IS SO ORDERED**.

DATED: January 22, 2026

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**